UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FREDDY ORJUELA, SR.,
　　　　Petitioner,

v.　　　　　　　　　　　　　　　　Case No. 8:18-cv-848-T-27AEP

UNITED STATES OF AMERICA,
　　　　Respondent.

## UNITED STATES' RESPONSE IN OPPOSITION TO ORJUELA'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

The United States opposes for the following reasons Orjuela's motion to vacate, set aside, or correct his sentence. Civ. Doc. 1.[1]

## I.　　STATEMENT OF THE CASE AND FACTS

### A.　　Procedural history

Orjuela was indicted for making a false statement on an application for a construction loan from Century Bank, a federally insured financial institution Doc. 1. Orjuela proceeded to trial and a jury found him guilty. Doc. 80.

In the final Presentence Investigation Report ("PSR"), the probation office recommended a base offense level of 7 because the offense's maximum penalty was greater than 20 years. PSR ¶ 17. Since the loss amount exceeded $550,000, a

---

[1] References to filings in criminal case number 8:16-cr-397-T-27AEP are cited as "Doc. [document number]." References to filings in this civil case are cited as "Civ. Doc. [document number]."

14-level enhancement applied. *Id.* ¶ 18. Under USSG §2B1.1(b)(16)(A), Orjuela received a two-level enhancement because he derived more than $1 million in gross receipts from the bank as a result of his offense conduct. *Id.* ¶ 19. Notably, Orjuela did not receive any reductions as the probation office stated he did not "clearly [demonstrate] acceptance of responsibility for the offense." *Id.* ¶ 25. Coupled with a total offense level of 23 and criminal history category II, Orjuela's advisory guidelines range was 51–63 months' imprisonment. *Id.* ¶¶ 26, 33, 63.

After counsel made various objections to the PSR, *see generally* PSR addendum, counsel filed a sentencing memorandum. Doc. 88. In it, counsel emphasized Orjuela's charitable side, including how in the past he often sent money back to Colombia. *Id.* at 2–3. Counsel highlighted how Orjuela made sure his home had a spare room for the "always-present family and friends" and church members in need. *Id.* at 4. Due to his age and ability to obtain gainful employment, counsel recommended a sentence of 13 months' imprisonment. *Id.* at 8–9.

Counsel reiterated objections to the PSR, including an objection to paragraphs eight, nine, and ten at sentencing. Doc. 103 at 5–7. During mitigation, counsel argued this conviction was "a different kind of crime" than the one of which Orjuela was previously convicted 20 years earlier. *Id.* at 10–11. Counsel highlighted that Orjuela had a significant amount of support from his family and

community. *Id.* at 16. Indeed, Orjuela's children spoke before this Court and asked it to consider the role Orjuela played in their lives. *Id.* at 27. Rather than a guideline sentence, counsel again requested this Court consider a 13-month sentence. *Id.* at 17–18.

This Court sentenced Orjuela to 24 months' imprisonment and ordered him to pay $960,020 in restitution. Doc. 91. Orjuela did not file an appeal. Instead, Orjuela has filed the above-captioned 2255 motion alleging that he is entitled to a reduction under Amendment 794 (Ground One) and counsel was ineffective for failing to file a notice of appeal (Ground Two). Civ. Doc. 1 at 4–5.

**B.     Statement of facts**

In 2006, Orjuela and his wife applied for a $1,475,950 construction loan for their Sarasota home with Century Bank. PSR ¶ 6. Due to his wife's poor credit history, Orjuela applied for the loan solely in his name. *Id.* ¶ 7. Orjuela falsely indicated he owned a mortgage company and earned $30,000 a month. *Id.* ¶ 8. When asked if he had declared bankruptcy in the last seven years, Orjuela selected "no." *Id.* He also falsely understated the amount of mortgages and liens on the properties he owned. *Id.*

An underwriter for Century Bank ran Orjuela's credit history and discovered Orjuela declared bankruptcy within the allotted time. *Id.* ¶ 9. The underwriter also discovered Orjuela did not own the mortgage company, but

instead was an employee and ineligible for the specific loan. *Id.* Although Orjuela's debt to income ratio, even using the fraudulently inflated income, did not meet the bank's lending standards, the bank's president waived the deficiencies and closed the loan in January 2007. *Id.* Orjuela started to make payments in February 2007 and continued payments until April 2008. *Id.* Contractors filed liens on Orjuela's property beginning in May 2007. *Id.* ¶ 10. Once Orjuela stopped making monthly payments in 2008, Iberia Bank began foreclosure proceedings. *Id.* In total, Iberia Bank lost $960,020. *Id.*

## II.   MEMORANDUM OF LAW

### A.   Burden of proof

In general, on collateral review the petitioner bears the burden of proof and persuasion on each and every aspect of his claim, *see In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) (collecting cases), which is "a significantly higher hurdle than would exist on direct appeal" under plain error review, *see United States v. Frady*, 456 U.S. 152, 164–66 (1982). Accordingly, if this Court "cannot tell one way or the other" whether the claim is valid, then the defendant has failed to carry his burden. *Moore*, 830 F.3d at 1273; *cf. United States v. Rodriguez*, 398 F.3d 1291, 1300 (11th Cir. 2005) (in plain error review, "the burden truly is on the defendant to show that the error actually did make a difference … Where errors could have cut either way and uncertainty exists, the burden is the decisive factor

in the third prong of the plain error test, and the burden is on the defendant."). Orjuela cannot meet this burden.

## B. Timeliness

Orjuela's motion is not timely and should be dismissed. Section 2255 allows a prisoner one year to file a motion seeking relief from his conviction and sentence. The one-year period runs from the latest of:

(1)   the date on which the judgment of conviction becomes final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). The one-year limitation applies to all claims under section 2255, including claims cast in jurisdictional terms. *See Williams v. United States*, 383 F. App'x 927, 929–30 (11th Cir. 2010); *Barreto-Barreto v. United States*, 551 F.3d 95, 100 (1st Cir. 2008).

Orjuela's judgment of conviction became final on March 15, 2017, when the time for filing a direct appeal had passed. *See Adams v. United States,* 173 F.3d

1339, 1342 n.2 (11th Cir. 1999) (if defendant does not pursue direct appeal, conviction becomes final when time for filing direct appeal expires). Therefore, he had until March 15, 2018 to file his section 2255 motion. Orjuela filed his motion on April 5, 2018. Civ. Doc. 1-2. Because he filed his motion more than one year after his conviction became final, his motion is untimely and should be dismissed. *See Dodd v. United States*, 545 U.S. 353, 358–59 (2005) (affirming Eleventh Circuit's decision holding that untimely section 2255 motion was barred).

Under the prison mailbox rule, a *pro se* prisoner's notice is considered filed on the date the prisoner delivers the notice to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266 (1988). Notably, Orjuela did not date his motion, nor did he attempt to address his untimeliness. *See* Civ. Docs. 1 at 10, 12; 1-2.

If a petitioner attempts to file a section 2255 motion outside the one-year statute of limitations period, a district court may still review the motion if it determines that the petitioner is entitled to equitable tolling. *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (considering equitable tolling to excuse untimeliness of section 2254 motion).[2] Equitable tolling is a rare and extraordinary remedy. *Id.* at 1271; *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir.

---

[2] Cases which address equitable tolling of the statute of limitations under 28 U.S.C. § 2254 are "equally valid" with respect to the statute of limitations in section 2255 cases. *Jones v. United States*, 304 F.3d 1035, 1037 n. 4 (11th Cir. 2002).

2000) (equitable tolling is an "extraordinary remedy which is typically applied sparingly"). A court's equitable powers must be exercised on a case-by-case basis. *Holland v. Florida*, 560 U.S. 631, 649–650 (2010). Critically here, the burden of establishing eligibility for this extraordinary remedy "falls squarely on the prisoner." *Foley v. United States*, 420 F. App'x 941, 942 (11th Cir. 2011). A petitioner "must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue." *Hutchinson v. Florida*, 677 F.3d 1097, 1099 (11th Cir. 2012) (citation omitted). Moreover, "the allegations supporting equitable tolling must be specific and not conclusory." *Id.*

Equitable tolling is available only when a petitioner establishes he has been pursuing his rights diligently and that extraordinary circumstances prevented him from timely exercising his rights. *See Holland*, 506 U.S. at 648. There must be a causal connection between the claimed extraordinary circumstances and the late filing of the motion. *See San Martin*, 633 F.3d at 1267. A general change in the law does not suffice. *See Gonzalez v. Crosby*, 545 U.S. 524, 537–38 (2005); *Outler v. United States*, 485 F.3d 1273, 1281–82 (11th Cir. 2007).

Orjuela has not alleged that there was any impediment to timely filing his 2255 motion. Prior to filing his section 2255 motion, Orjuela filed a motion to reduce his sentence on March 1, 2018. Doc. 105. On March 6, this Court denied his motion and informed Orjuela that any ineffective assistance of counsel claims

are properly raised in a section 2255 motion. Doc. 106. Orjuela did not file his

motion with this Court until April 5, 2018—three weeks past his March 15, 2018

filing deadline. Civ. Doc. 1-2. Orjuela is noticeably silent as to the timeliness of

his motion. Civ. Doc. 1 at 10. Mere ignorance of the law or lack of knowledge of

filing deadlines does not justify equitable tolling of AEDPA's limitation period.

*See Johnson v. United States*, 544 U.S. 295, 311 (2005). Accordingly, Orjuela cannot

rely on equitable tolling to excuse his untimeliness and his motion should be

denied.

## C.   Cognizability

While Orjuela's ineffective assistance of counsel claim in Ground Two is

cognizable, his claim in Ground One is not. "Section 2255 does not provide a

remedy for every alleged error in conviction and sentencing." *Spencer v. United

States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc). When a prisoner, like

Orjuela, claims that his "sentence was imposed in violation of the Constitution or

laws of the United States… or is otherwise subject to collateral attack," 28 U.S.C.

§ 2255(a), a court lacks authority to grant relief "unless the claimed error

constitute[s] 'a fundamental defect which inherently results in a complete

miscarriage of justice,'" *Spencer*, 773 F.3d at 1138 (quoting *United States v.

Addonizio*, 442 U.S. 178, 185 (1979)). Such a miscarriage of justice occurs where a

defendant is actually innocent, or where a defendant's sentence is "unlawful," as

when the defendant and his counsel are denied the right to be present at the sentencing hearing, or where the sentence exceeds the statutory maximum. *Id.* at 1138–39. In contrast, lesser errors—such as allegations concerning sentencing guidelines calculations—are not cognizable on collateral review. *Id.* at 1138–40.

Orjuela alleges eligibility for retroactive application of a clarifying amendment to USSG §3B1.2, which became effective on November 1, 2015. Civ. Doc. 1; *see also* Amendment 794 to the Guidelines (Nov. 1, 2015) (stating the amendment "provides additional guidance to sentencing courts in determining whether a mitigating role adjustment applies."). A challenge based on a clarifying amendment to the Guidelines is not cognizable in a section 2255 proceeding. *See Burke v. United States*, 152 F.3d 1329, 1331–32 (11th Cir. 1998) (claim that enhancement of a sentence was contrary to subsequently enacted clarifying amendment to the mandatory Sentencing Guidelines was a non-constitutional claim that was generally not sufficient to make the claim cognizable under § 2255); *accord Frady*, 456 U.S. at 165 (1982) ("an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment").[3] In *Burke*, the Eleventh Circuit held "a claim that the sentence

---

[3] In *Frady*, the Supreme Court explained: "It has, of course, long been settled that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice." 456 U.S. at 165.

imposed is contrary to a post-sentencing clarifying amendment is a non-constitutional issue that does not provide a basis for collateral relief in the absence of a complete miscarriage of justice." 152 F.3d at 1332. "Clarifying amendments do not effect a substantive change, but provide persuasive evidence of how the Sentencing Commission originally envisioned application of the relevant guideline." *Id.*

For Orjuela to be able to raise the application of Amendment 794 on collateral review, he would need to show that his sentence was a complete miscarriage of justice because the Court did not follow the clarifying amendment to the Guidelines. *Burke*, 152 F.3d at 1332. Orjuela does not argue that his sentence was a complete miscarriage of justice and thus has waived this argument. *See Burke*, 152 F.3d at 1331–32. Here, Orjuela was sentenced to 24 month's imprisonment. Doc. 91. This sentence is well below the statutory maximum of 30 years' imprisonment.

## D.    Merits

To succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). When evaluating performance, this Court must apply a "strong presumption" that counsel has "rendered adequate assistance and [has] made all

significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.... We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc; quoting *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992)).

To establish deficient performance, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). A petitioner demonstrates prejudice only when he establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either of the *Strickland* prongs, his claim fails. *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

Orjuela first alleges that his trial counsel was ineffective because he failed to argue that Orjuela was entitled to a mitigating role reduction under Section 3B1.2 of the United States Sentencing Guidelines.

The government's theory of the case was that Orjuela, who supplied the information and signed the false loan application was the only participant in the crime. As such, he was not entitled to a role adjustment. USSG § 3B1.2, Application Note 2. At trial, Orjuela sought to place the blame on the loan officer who took the application. Even if the loan officer was also culpably involved in the fraud, however, Orjuela would not be entitled to a role adjustment.  In order to receive a mitigating role adjustment a defendant must be substantially less culpable than the average participant in the charged offense. USSG. § 3B1.2, Application Note 3(A). In making that determination Application Note 3(C) provides a non-exhaustive list of factors to be considered. They include:

(1)    The degree to which the defendant understood the scope and structure of the criminal activity;
(2)    The degree to which the defendant participated in planning or organizing the criminal activity;
(3)    The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
(4)     The nature and extend to the defendant's participation in the commission of the criminal activity, including  the acts the defendant  performed and the responsibility and discretion the defendant had in performing those acts; and
(5)    The degree to which the defendant stood to benefit from the criminal activity.

In the instant case Orjuela, a mortgage broker and owner of several mortgaged investment properties, certainly understood the import of the false entries placed on the loan application. This understanding was reinforced by his prior conviction for conspiracy to commit bank fraud. He also signed and

12

submitted the loan application. He could have refused to do so at any time. Finally, he personally benefitted to the tune of more than $1,000,000 in loan proceeds by means of this false statement.

Accordingly, trial counsel's argument for a role reduction would have bordered on the frivolous, and had he made it, would not have prevailed. Orjuela has thus failed to establish either of the *Strickland* prongs.

Because Orjuela's notice-of-appeal claim involves an allegation that counsel did not pursue a direct appeal, analysis of this claim necessarily begins with the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it, acts in a professionally unreasonable manner per se under *Strickland*. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Gomez-Diaz v. United States*, 433 F.3d 788, 791–92 (11th Cir. 2005). If, however, a petitioner neither specifically instructs counsel to file an appeal nor asks that an appeal not be taken, a court must determine whether counsel "consulted" with the petitioner about an appeal. *Flores-Ortega*, 528 U.S. at 488.

A claim that counsel rendered ineffective assistance by failing to file a notice of appeal is subject to the test established in *Strickland*, 466 U.S. at 686. In *Flores-Ortega*, the Supreme Court "h[eld] that this test applies to claims ... that counsel was constitutionally ineffective for failing to file a notice of appeal." *Flores-Ortega*, 528 U.S. at 477. This test requires a case-by-case set of inquiries. *Id.* at 477–86. The

Supreme Court has held that the failure to file a requested notice of appeal is per se ineffective assistance of counsel, regardless of whether the appeal would have had merit. *Id.* at 483–86. On the other hand, "a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* at 477.

Moreover, counsel generally has a duty to consult with the client about an appeal. *Id.* at 481 (expecting that courts "will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal."). The Supreme Court has defined the term "consult" specifically to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes," to assure that any waiver of the right to appeal is knowing and voluntary. *Id.* at 478. There is no "bright-line rule that counsel must always consult with the defendant regarding an appeal." *Id.* at 480; *see also Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) ("A criminal defense lawyer is not under a per se constitutional obligation to consult with his or her client about an appeal."). In some cases, the Sixth Amendment requires such consultation; in others, it does not. *Otero*, 499 F.3d at 1270. "We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 479).

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are no nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480). This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly … waived some or all appeal rights." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

A factual credibility determination is at this Court's discretion.[4] This Court must "consider[] all relevant factors" to properly determine whether Orjuela "desired an appeal or … sufficiently demonstrated to counsel an interest in an appeal." *Flores-Ortega*, 528 U.S. at 480.

Orjuela does not satisfy the *Flores-Ortega* standard by merely stating counsel failed to file an appeal. Civ. Doc. 1 at 5. Indeed, Orjuela fails to provide any support that, but for counsel's purported deficient performance, he would have timely appealed. *Flores-Ortega* at 484. His barebones assertion is not enough to

---

[4] *See United States v. Bryant*, Nos. 8:04-cr-239-T-23EAJ, 8:06-cv-1366-T-23EAJ, 2008 WL 269123 (M.D. Fla. January 30, 2008); *United States v. Sijuentes*, Nos. 8:03-cr-164-T-23MAP, 8:04-cv-2073-T-23MAP, 8:04-cv-2105-T-23MAP, 8:04-cv-2125-T-23MAP, 2008 WL 239178 (M.D. Fla. January 28, 2008).

warrant further consideration of his claim by this Court. *See Wilson v. United States*, 962 F.2d at 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (citation omitted); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)).

In his affidavit, counsel states he met with Orjuela on two different occasions prior to sentencing to discuss the PSR. *See* Civ. Doc. 5 at 2. USSG §3B1.2 states that the guideline "is not applicable unless more than one participant was involved in the offense." Because Orjuela was the sole participant in the offense, counsel states he did not discuss a minor-role objection. *Id.* at 2. After sentencing, counsel discussed the appellate rights with Orjuela and the possibility of a cross appeal if Orjuela did. *Id.* Days later, on March 10, 2018 counsel states Orjuela did not want to appeal his sentence. *Id.* Indeed, counsel memorialized Orjuela's decision in his case notes. Civ. Doc. 6-1.

Success to Orjuela's ineffective assistance claim is dependent upon both deficient performance by counsel and prejudice. Orjuela provides fails to provide any specific details regarding when he purportedly informed counsel to file an appeal. . Indeed, counsel's affidavit shows he consulted with Orjuela multiple

times about an appeal and it was Orjuela's decision not to appeal his sentence. *See generally* Civ. Docs. 5, 6-1. Counsel's affidavit, coupled with his zealous representation at sentencing, contradicts Orjuela's claim that counsel was ineffective. Orjuela's claim is without merit and entitles him to no relief.

### E.    Need for an evidentiary hearing

Orjuela is not entitled to an evidentiary hearing. Orjuela has the burden of establishing the need for an evidentiary hearing, *see Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984) (en banc), and he would be entitled to a hearing only if his allegations, if proved, would establish a right to collateral relief, *see Townsend v. Sain*, 372 U.S. 293, 307 (1963). A district court deciding a section 2255 motion may "order … its summary dismissal '[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]'" *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003) (quoting 28 U.S.C. foll. § 2255). Accordingly, no hearing is required when the record establishes that a section 2255 claim lacks merit, *see United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984), or that it is defaulted, *see McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Orjuela has not established the need for an evidentiary hearing because his motion is not timely filed.

THEREFORE, the United States respectfully requests that this Court deny

Orjuela's 28 U.S.C. § 2255 motion.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


By:     */s/ Robert A. Mosakowski*
        Robert A. Mosakowski
        Assistant United States Attorney
        United States Attorney No. 051
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone:   (813) 274-6000
        Facsimile:    (813) 274-6358
        E-mail: Robert.Mosakowski@usdoj.gov

18

**Freddy Orjuela, Sr. v. United States          Case No. 8:18-cv-848-T-27AEP**

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2018, a true and correct copy of the foregoing document and the notice of electronic filing were sent by United States Mail to the following non-CM/ECF participant:

> Freddy Orjuela, Sr.
> Register No. 41502-018
> FPC Pensacola
> Federal Prison Camp
> P.O. Box 3949
> Pensacola, Florida 32516

By:    */s/ Robert A. Mosakowski*
Robert A. Mosakowski
Assistant United States Attorney
United States Attorney No. 051
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Robert.Mosakowski@usdoj.gov